IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| ACCESS CARE, INC., | : |
| DEBTORS | : BANKRUPTCY NO. 04-30771(SR) |
| ACCESS CARE, INC., | : |
| PLAINTIFF, | : ADVERSARY NO. 05-533 |
| V. | : |
| STEN-BARR NETWORK SOLUTIONS, INC., | : |
| DEFENDANT. | : |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

Defendant, Sten-Barr Network Solutions, Inc. ("Sten-Barr"), moves pursuant to Federal Rule of Civil Procedure 12(b)(3), to have the complaint of plaintiff/debtor, Access Care, Inc. ("Debtor"), dismissed based upon the forum selection clause ("Forum Selection Clause") contained in the parties' contracts.[1]  In the alternative,

---

[1] Rule 12(b)(3) of the Federal Rules of Civil Procedure is applicable here pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.  In Salovaara v. Jackson National Life Insurance, 246 F.3d 289, 298 n.6 (3d Cir. 2001), the Third Circuit recognized, without resolving the issue, that there is "much disagreement" over whether a motion to dismiss based on a forum selection clause should be made pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue or 12(b)(6) for failure to state a claim upon which relief can be
(continued...)

Sten-Barr seeks to have the adversary proceeding transferred to Brevard County, Florida.

Upon consideration, Sten-Barr's request for dismissal shall be denied. Its request for transfer shall be granted albeit not to its requested forum. This proceeding shall be transferred to the federal district court in Hillsborough County, Florida which is located in Tampa. Hillsborough County is one of the two jurisdictions identified in the parties' Forum Selection Clause. The case is not being transferred to Brevard County, as Sten-Barr requested, because there is no federal court within that county.

**Background**

When Debtor was in business, it sold and/or leased products and goods, such as beds, bedding and other rehabilitation hardware, that were used by nursing home

---

[1](...continued)
granted. This issue is similarly unresolved in the Fourth Circuit. See Millennium Studios, Inc. V. Man Roland, Inc. (In re Millennium Studios, Inc.), 286 B.R. 300, 306 (D. Md. 2002) (recognizing that in the Fourth Circuit, there "is currently no procedural mechanism specifically tailored to handle a motion to dismiss based on a forum selection clause [because] ...[t]he Fourth Circuit has not decided the issue of what approach to take and which subsection of Rule 12(b) is most appropriate for the situation."). Debtor raises this point regarding the correct procedural mechanism for seeking a dismissal based upon a forum selection clause in its response to Sten-Barr's motion, stating that "it may be inappropriate to utilize Rule 12(b)(3) as a means to enforce a forum selection clause" since venue in the Eastern District of Pennsylvania is proper. See Response of Access Care, Inc. to Motion of Sten-Barr Network Solutions, Inc. To Dismiss Complaint ("Response") at 3 n.8. However, at the hearing on Sten-Barr's motion, Sten-Barr requested this Court, as an alternative to dismissing this proceeding, to transfer it to Florida. See Transcript, dated October 11, 2005 ("Transcript"), at 7. Since transfer is the remedy which Sten-Barr is being granted, it is unnecessary to resolve the issue of whether Sten-Barr erred by relying upon Rule 12(b)(3) rather than Rule 12(b)(6) in seeking dismissal of this proceeding.

facilities and hospitals. Complaint ¶8. While in business, Debtor entered into seven agreements with Sten-Barr to act as its sub-distributor. Id. ¶¶ 9–10, 14-15, 19-20, 24-25, 29-30, 34-35, 39-40. Debtor entered into six of these agreements (the "Six Agreements") between February of 2002 through June of 2003; it entered into the seventh agreement (the "Seventh Agreement") at some unspecified time. Id. All Six Agreements contain the following provision:

> Attorney's Fees - Litigation: In the event that any party hereto institutes a legal action (at law and/or in equity) to enforce any provision of this Agreement, the prevailing party shall be entitled to recover from the other party any costs incurred, including reasonable attorney's fees, both at trial and appeal. **The jurisdiction and venue for purposes of this Agreement shall be Hillsborough County or Brevard County, Florida, at the sole discretion of Sten-Barr Network Solutions, Inc.**

Id., Exhibits A through F (emphasis added). The Forum Selection Clause limits the location at which a lawsuit under the agreements can be maintained to two counties in Florida, namely Hillsborough or Brevard Counties. As the clause is worded, it is within Sten-Barr's "sole discretion" to choose between these two counties. Moreover, because the clause does not specify whether suit must be brought in state or federal court, it is also within Sten-Barr's "sole discretion" to choose to litigate in state or federal court.[2] However, since there is no federal court located in

---

[2] At the hearing, Debtor's counsel argued that the Forum Selection Clause is ambiguous because it grants Sten-Barr sole discretion to choose the county (Brevard or Hillsborough) and court (state or federal) for any lawsuit under the parties' agreements regardless of whether *Debtor* is the party initiating the lawsuit. Transcript at 13-17. This
(continued...)

3

Brevard County, the only federal court in which this proceeding could be litigated in compliance with the Forum Selection Clause is in Hillsborough County.

In June of 2004, the parties terminated their agreements. Transcript at 9. Prior to the terminations, Sten-Barr "failed and refused" to pay Debtor for certain amounts due and owing thereunder. Complaint ¶¶ 13, 18, 23, 28, 33, 38, 43. Nevertheless, Debtor contends that the parties terminated the agreements for reasons unrelated, or at least not wholly related, to Sten-Barr's failure or refusal to pay.[3] After the terminations, Debtor continued providing certain products and goods to Sten-Barr's customers at Sten-Barr's request,[4] but Sten-Barr continued to fail and

---

[2](...continued)
argument is not persuasive. Id. at 17. The language of the Forum Selection Clause is definite and clear. Simply because the parties agreed that Sten-Barr has sole discretion to decide between the choices identified in the clause does not render it ambiguous.

[3] In the Complaint, Debtor alleged that Sten-Barr breached its agreements with Debtor "by, among other things, failing to pay Access Care for the products and services which Access Care provided as the exclusive sub-distributor of Sten-Barr." Complaint ¶46. However, at the hearing, Debtor's counsel indicated, that while she did not have all of the facts, that she was under the impression that the parties' agreements were terminated for reasons "that had nothing to do with billing issues or collection of receivables." Transcript at 21.

[4] At the hearing, Debtor's Counsel explained this point, stating:

> [A]ll of the contracts were terminated in June prior to the filing of the bankruptcy case. However, there was still a course of dealings between the debtor and Sten-Barr after June of 2004. Specifically, Sten-Barr had requested that the debtor maintain the equipment at certain facilities. ... Sten-Barr requested that rather than we remove the bed from under the patient, that we continue to provide services to these patients.

Transcript at 9.

refuse to pay for the same. Transcript at 9, 21.

On August 6, 2004, Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code.[5]  Complaint ¶5.  Thereafter, Debtor continued providing certain products and goods for Sten-Barr; however, Sten-Barr continued to fail and refuse to pay Debtor for amounts due and owing.

Debtor's confirmed Chapter 11 plan of reorganization is a liquidation plan.[6] See Debtor's Modified First Amended Chapter 11 Plan of Reorganization ("Plan") ¶5.8.[7]  Pursuant to the terms of its Plan, Debtor sold certain assets which were

---

[5] In its Response, Debtor notes that, in its bankruptcy case, Sten-Barr filed an Entry of Appearance and a Request for Notice Pursuant to Rule 2002, Response ¶3, participated in various hearings concerning the sale of Debtor's assets, id. ¶4, and filed an objection to the entry of an order authorizing the sale of certain inventory of the Debtor's assets (which Sten-Barr argued was its 'inventory.'"). Id. In the event that Debtor is relying upon these allegations to argue (which it never directly does) that Sten-Barr waived its right to rely upon the Forum Selection Clause, the Court rejects the argument. The Third Circuit has specifically held that a litigant can file a proof of claim in a bankruptcy case without waiving the provisions of a forum selection clause. See Coastal Steel Corporation v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 204 (3d Cir. 1983), *overruled on other grounds,* Lauro Lines v. Chasser, 490 U.S. 495 (1989) (holding that orders declining to enforce forum selection clauses are not immediately appealable).  A litigant can certainly  act defensively in a bankruptcy case located in a forum which the debtor has chosen without waiving its right under a forum selection clause. See N. Parent, Inc. v. Cotter & Company (In re N. Parent, Inc.), 221 B.R. 609, 617-18 (Bankr. D. Mass. 1998).

[6] Debtor conceded in its Response that "this Court may take judicial notice of matters of record in the Bankruptcy Case[.]" Response at 1 n.1 (*citing* to In re Indian Palms Associates, Ltd., 61 F.3d 197, 204-05 (3d Cir. 1995)).

[7] In Article XI, the Plan provides, *inter alia,* for this Court's retention of jurisdiction post-confirmation to: (1) "hear and determine" adversary proceedings involving account receivables owed to the Debtor: (2) "recover" all assets and property of the Debtor; and (3) "adjudicate and determine all adversary proceedings permitted under the Code." Plan, Article XI, ¶¶ 11.4, 11.12, 11.18. However, as Judge Fox held in Unified Data Systems, Inc. V. Almarc Corp. (In re Almarc Corp.), 94 B.R. 361, 365 & 366 n.5 (Bankr. E.D. Pa.
(continued...)

5

warehoused in Pittsburgh and Philadelphia for approximately $408,000. See Order Approving Debtor's Motion for Sale of Debtor's Assets Free and Clear of Lien and Encumbrances, dated November 30, 2004; Order Approving Motion of Debtor for the Entry of an Order Authorizing the Sale of Certain Portions of the Debtor's Assets and Approval of the Auction of Concentrators Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363 and Fed.R.Bank.P. 6004. In addition, Debtor sold certain inventory which it had used in its operations in New England for approximately $210,000. See Debtor's Auction Report.

In addition to the sales of its assets, Debtor's liquidation Plan provides for the collection of account receivables, including those allegedly owed by Sten-Barr. See Plan ¶5.2; Disclosure Statement in Respect of the Debtor's First Amended Chapter 11 Plan of Reorganization ¶11.4

On or about August 23, 2005, Debtor commenced this adversary proceeding against Sten-Barr to collect account receivables. Debtor's Complaint alleges the following two causes of action: (1) breach of contract; and (2) unjust enrichment/quantum meruit.

---

[7](...continued)
1988), a debtor cannot confer post-confirmation jurisdiction upon the bankruptcy court contrary to the parties' forum selection clause by merely inserting a provision in a plan or order of confirmation reserving jurisdiction when the party who seeks to enforce the clause was not a creditor of the estate, had no prepetition claim and did not vote upon the confirmed plan. See also Coastal Steel Corporation, supra, 709 F.2d at 204 (although provision in debtor's plan of reorganization provided for the retention of jurisdiction over the parties' litigation, the plan did not "adjudicate anything respecting" the enforcement of the parties' forum selection clause.)

In Count I, Debtor alleges that Sten-Barr breached the parties' seven agreements by, "among other things, failing to pay" the account receivables which it owes and that, "as a direct and proximate cause" of the breaches, Debtor has suffered damages in the amount of $277,000. In addition, Debtor alleges, based upon the parties' agreements, that the prevailing party in the litigation is entitled 'to ... costs incurred, including reasonable attorney's fees." Complaint ¶ 49.  Debtor seeks damages in the amount of $277,000 plus interest and costs, including reasonable attorney's fees.

In Count II for "Unjust Enrichment/Quantum Meruit," Debtor alleges that: (1) Sten-Barr has retained valuable benefits from Debtor; (ii) it would be inequitable to allow Sten-Barr to retain such benefits without compensating Debtor for them; and (iii) Debtor has suffered damages in the amount of $277,000 which, notably, is the same amount of damages alleged in Count I.[8]  In this count, Debtor seeks judgment

---

[8] The $277,000 is the total amount of account receivables which Sten-Barr allegedly owes.  As of the date of the hearing, Debtor's counsel did not know and, indeed, wanted permission to conduct discovery to determine, what amount of the receivables is attributable to pre-termination versus post-termination of the parties' agreements.  Transcript at 22-23.  Accordingly, at this stage of the proceeding, Debtor has pled its counts, for breach of contract and quantum meruit, in the alternative.  Part of the $277,000 may be for pre-termination services and part of the $277,000 may be for post-termination services.  While claims for quantum meruit are "precluded when the relationship between the parties is founded on a written agreement or express contract," Surya Systems v. Sunku, 2005 WL 1514225, *4 at (E.D. Pa. June 24, 2005) (citing Benefit Trust Life In. Co. v. Union National Bank, 776 F.2d 1174, 1177 (3d Cir. 1985) ("[Q]uantum meruit is inapplicable when the parties' contract is founded on express contract.")), it unclear from the pleading, how the amount is divided between these time periods.  For purposes of enforcing the parties' Forum Selection Clause, it is unnecessary to resolve this issue.  The Complaint specifically alleges that account receivables are owed for goods and products
(continued...)

against for $277,000.

## **Arguments**

The parties agree that the general rule established by the Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), for determining the validity and enforcement of forum selection clauses governs the instant dispute.[9]   Motion

---

[8](...continued)
provided pre-termination.  As to these account receivables, the Forum Selection Clause applies and shall be enforced.  As to any account receivables owed for goods and products provided post-termination, the Court shall utilize its discretion, based on judicial efficiency, to transfer these claims too so that the entire adversary proceeding may be resolved in the same forum.  See infra at 11-12.  See also MAI Systems Corp. v. Bass (In re MAI Systems Corp.), 1995 WL 84210, at *3 (Bankr. D. Del., Feb. 22, 1995) (reasoning that adversary proceeding should be transferred, in its entirety, to district court in Michigan pursuant to forum selection clause because even though "some of the claims in the complaint do not relate to the [agreement with the forum selection clause],"...[j]udicial efficiency and other considerations suggest that the 'unrelated' portions of MIA's adversary be heard in the same Michigan action.").

[9] The parties' agreements do not contain a choice of law provision.  However, since the parties agree that the M/S Bremen rule governs this proceeding, the Court shall apply it here.  However, even if state law rather than federal law was applied here (the state law would either be the law of Pennsylvania, where the dispute was filed, or the law of Florida, which is the state identified in the Forum Selection Clause), the result would be the same because the law of Florida and Pennsylvania is the same as, or similar to, the Supreme Court's ruling in M/S Bremen.

In 1986, the Florida Supreme Court specifically adopted the view of the Supreme Court in M/S Bremen and held that "forum selection clauses should be enforced in the absence of a showing that enforcement would be unreasonable or unjust." Manrique v. Fabbri, 496 So.2d 437, 440 (Fla. 1986).  The state court also noted that the test of "unreasonableness is not mere inconvenience or additional expense" but requires a showing that trial in the contractual forum would be so gravely difficult and inconvenient that the respondent would be, for all practical purposes, deprived of his day in court.  Id. at 440 n.4.

The law of Pennsylvania is similar to the Supreme Court's ruling in M/S Bremen. In Central Contracting Co. v. C.E. Youngdahl & Co., 418 Pa. 122, 133, 209 A.2d 810, 816
(continued...)

¶7; Response ¶¶7-8; Transcript at 8 (Debtor's counsel stated: "[First, let me say that the debtor doesn't dispute the elements set forth in the <u>Bremen</u> Supreme Court case."). The Third Circuit Court of Appeals summarized the <u>M/S Bremen</u> rule in <u>Coastal Steel Corporation v. Tilghman Wheelabrator Ltd.</u>, <u>supra</u>, stating as follows:

> *The Bremen* ... rule is that a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

709 F.2d at 202. Based on Third Circuit precedent, the <u>M/S Bremen</u> rule is applicable in bankruptcy proceedings. <u>Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.)</u>, <u>supra</u>, 817 F.2d at 1050 (*citing* <u>Coastal Steel</u>, 709 F.2d at 202) ("[T]his Court, in *Coastal Steel*, held that *The Bremen* standard was applicable even in a bankruptcy proceeding.").

Debtor contends that the Forum Selection Clause should not be enforced under the <u>M/S Bremen</u> rule because the second and third exceptions apply here.

---

[9](...continued)
(1965), the Pennsylvania Supreme Court held that "a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties [to a forum selection clause] have freely agreed that litigation should be conducted in another forum and where such agreement is not unreasonable at the time of litigation." <u>See</u> <u>also</u> <u>Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.</u>, 759 A.2d 926, 930 (Pa. Super. 2000). Under Pennsylvania law, as under the law of Florida, "a clause is not unreasonable if it makes enforcing the agreement merely inconvenient or expensive." <u>Id</u>. at 930.

This Court disagrees. However, rather than dismissing this proceeding based on the Forum Selection Clause, this Court shall utilize its discretion to transfer the proceeding to the district court in Hillsborough County.

(I) The Second Exception of the M/S Bremen Rule

Debtor argues that enforcement of the Forum Selection Clause would violate the strong public policy which exists in favor of centralizing all proceedings in a bankruptcy case in the bankruptcy court where the case is pending.[10] According to Debtor, a portion of its claims is for good and products which it provided to Sten-Barr post-petition, rendering a portion of its claims within the "core" jurisdiction of this Court.[11] Response ¶¶12-13. Debtor asserts that this distinction between "core" and "non-core" proceedings "can be critical" because there is "a line of cases [which] ... clearly supports the proposition that where a 'proceeding falls within a bankruptcy court's core jurisdiction, a forum clause will not override.'" See Id. ¶14 (*quoting* N.

---

[10] Debtor asserts in footnote 6 of its Response that "[t]his collection proceeding accounts for the *largest receivable* sought by the Debtor, the impact of which will significantly impact distributions to creditors under the Plan." Response at 3 n.6 (italics added). Presumably based on this footnote, Sten-Barr's counsel argued at the hearing that Debtor is raising "what is . . . characteristically called a linchpin argument, in that the litigation is a linchpin to the Chapter 11 debtor's plan of reorganization." Transcript at 3. If Debtor is, in fact, asserting a linchpin argument, its effort in this regard is limited to footnote 6 of its Response. Debtor never mentioned the argument at the hearing. In any event, the argument fails because, as this Court explained in New Knight, Inc. v. National Wire & Metal Technologies, Inc. (In re New Knight), 291 B.R. 367, 375-76 (Bankr. E.D. Pa. 2003), the linchpin theory of "core" jurisdiction is limited to complex Chapter 11 cases generally involving insurance coverage issues and thousands of personal injury claimants.

[11] The "enforcement of pre-petition contract actions or breaches of that contract are non-core related proceedings." Yarosz v. National American Insurance Company (In re Yarosz), 1995 WL 311867, at *2 (Bankr. M.D. Pa. March 24, 1995).

Parent, Inc., supra, 221 B.R. at 621, *citing* In re Wheeling Pittsburgh Steel Corp., 108 B.R. 82 (Bankr. W.D. Pa. 1989)).

While there is undoubtedly a public policy which exists in favor of "facilitating the collection and distribution of debtor estates," Coastal Steel Corporation, supra, 709 F.3d at 202, but see Hays and Company v. Merrill, Lynch, Pierce, Fenner & Smith, 885 F.2d 1149, 1157 (3d Cir. 1989) (observing that "it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single forum."), it is debatable whether any of Debtor's claims fall within the bankruptcy court's "core" jurisdiction.  See McCrary & Dunlap Construction Company, LLC. v. CED Construction Partners, Ltd. (In re McCrary & Dunlap Construction Company, LLC., 256 B.R. 264, 266 (Bankr. M.D. Tenn. 2000) ("An action instigated by the debtor in the context of bankruptcy to collect an account receivable is most likely non-core.").  It is arguable that even Debtor's claims for goods provided post-petition fall within this Court's "related to" rather than "core" jurisdiction since they do not invoke any substantive right created by the Bankruptcy Code and could exist outside of a bankruptcy case.  See In re New Knight, Inc. v. National Wire & Metal Technologies, Inc., supra, 291 B.R. at 373-74 (explaining meaning of core, non-core and related proceedings).

Even if some of Debtor's claims are within the "core" jurisdiction of this Court, they are inextricably intertwined with Debtor's non-core, related claims.  It would be inefficient for this Court to retain jurisdiction over the "core" claims while transferring

the "related" claims to Florida.   See N. Parent, Inc., supra, 221 B.R. at 630 (concluding that resolution of the debtor's "core claims was inextricably intertwined with or duplicative of the facts and law necessary to determine the debtor's non-core fraud, breach of contact and usury claims" and that "it would be inappropriate for this Court to determine those core issues, while transferring the non-core issues elsewhere" because it would promote neither "judicial economy nor the efficient administration of the estate.").

(II) The Third Exception of the M/S Bremen Rule

Debtor also contends that enforcement of the Forum Selection Clause fits within the third exception to the M/S Bremen rule. With regard to this exception, the Third Circuit has ruled that the "party objecting to the enforcement of a forum selection clause as 'unreasonable'" must meet a "heavy burden" of proof.  Diaz Contracting, Inc., 817 F.2d at 1051-52.  Enforcement of the clause "'may be denied only where it would be 'seriously inconvenient,' such that the resisting party 'would be effectively deprived of its day in court.'" Id. at 1052 (*quoting* General Engineering Corp. V. Martin Marietta Alumina, Inc., 783 F.2d 352, 356 (3d Cir 1986)).

Debtor contends that it would be seriously inconvenient to litigate this dispute in Florida because:

> (1) Debtor and all of its records are located here in Pennsylvania;

>(2) Sten-Barr has local counsel who is intimately familiar with this Court, the proceedings before this Court and with Debtor's Plan;
>
>(3) All of the third parties whose records may have to be reviewed or whose employees may have to be deposed or called as witnesses at trial are located in Pennsylvania; and
>
>(4) Third party witnesses would be subject to compulsory process here but not in Florida. Debtor would be forced to utilize videotape trial depositions for any third party witnesses whom it seeks to call at trial, rendering the cost of trial more expensive.[12] Moreover, since Debtor would have to rely upon trial depositions, the presentation of its case at trial would be seriously undermined.

These factors do not satisfy Debtor's burden.

It may be inconvenient and expensive for Debtor to litigate in Florida since its records, its employees, all third party records and all third party witnesses are

---

[12] At the hearing, Sten-Barr's counsel contended that "any issues pertaining to third parties are really minimized in this case because of the billing dispute between the parties." Transcript at 6. In response, Debtor's counsel stated:

>Contrary to Mr. Hinchman's depiction of third parties, what we have here, to the extent that the records between the debtor and Sten-Barr don't match. The third parties are medical facilities in Pennsylvania. To the extent that we need to look at their records or depose any of those personnel, it would have to be done up here. I don't believe Florida has jurisdiction over those people. We're talking video depositions, et. cetera. *So, I believe that the cost of actually moving the matter down to Florida is a little more expensive than as so characterized by Mr. Hinchman.*

Id. at 13 (emphasis added). By making this statement, Debtor's counsel to a certain extent hoisted herself on her own petard. The standard for unreasonableness under M/S Bremen is far from satisfied by a financial burden that can be summarized as a "little more expensive" as that characterized by the opposing party.

13

located in Pennsylvania, but "'mere inconvenience or additional expense is not the test of unreasonableness." Diaz Contracting, Inc., 817 F.2d at 1053 (*quoting* Deolalikar v. Murlas Commodities, Inc., 602 F. Supp. 12, 15 (E.D. Pa. 1984) (*quoting* Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3d Cir. 1966)). There is no evidence that when Debtor agreed to the Forum Selection Clause, it had reason to expect that these circumstances (*i.e.*, location of the witnesses & records) would be otherwise in any litigation between the parties. See General Engineering Corporation v. Martin Marietta Alumina, Inc., supra, 783 F.2d at 359 (reasoning that witness unavailability was easily foreseeable at the time when the forum selection clause was agreed upon).

Moreover, Debtor failed to offer any evidence to establish that its records cannot be transported to Florida and no evidence to substantiate its assertion that its presentation of video depositions at trial will detrimentally affect the delivery of its case. Indeed, Debtor made no effort to identify any of its witnesses or describe their anticipated testimony. Absent a record supporting its assertions, Debtor has not satisfied its "heavy" burden of proof. See Arrow Plumbing and Heating, Inc. v. North American Mechanical Services Corp., 810 F. Supp. 369, 372-73 (D. R.I. 1993) (granting defendant's motion for a transfer of the action to Texas based on the parties' forum selection clause because plaintiff failed to carry its burden of specifying who the key witnesses were and why their testimony was materially necessary to the resolution of the matter).

14

The Court also notes that whether Sten-Barr has counsel who is familiar with this Court and the proceedings here is irrelevant to the determination of whether enforcement of the Forum Selection Clause would be unreasonable. The standard is not whether it would be more inconvenient for Sten-Barr to litigate here than for Debtor to litigate in Florida, but whether it would be so gravely inconvenient for Debtor to litigate in Florida that it will be effectively deprived of its day in court if forced to do so.

Since Debtor has not satisfied its burden of proof, the Forum Selection Clause shall be enforced. See Diaz Contracting, Inc., supra, 817 F.2d at 1054 ("[A]bsent a strong showing by the party opposing enforcement that the conditions under *the Bremen* have been met, the bankruptcy court must enforce the forum selection clause."). This conclusion, however, does not end the inquiry.

### III. Discretion to Transfer Rather than Dismiss

In Salovaara v. Jackson National Life Insurance Company, supra, 246 F.3d 289 (3d Cir. 2001), the Third Circuit explained that while a district court faced with a Rule 12 dismissal motion based on a forum selection clause has the power to grant a dismissal, it may also consider whether transferring the case to another federal forum "is the better course." Id. at 298-99. Acknowledging its preference for transfer over dismissal, the Third Circuit stated:

> We acknowledge that, as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer

rather than dismiss.

Id. at 299. The Third Circuit noted that transfer is only available where a federal forum is identified in the parties' forum selection clause. If the only forum identified in the forum selection clause is a state court, the only available remedy is dismissal. See id. at 298 (noting that transfer is not an option "when a forum selection clause specifies a non-federal forum.").

While Salovaara dealt with a non-bankruptcy action filed in district court, the Third Circuit's rationale seems equally applicable here. See MAI Systems Corp. V. Bass (In re MAI Systems Corp.), supra (transferring adversary proceeding to the district court in the Eastern District of Michigan based on forum selection clause in parties' agreement). In the instant case, transfer is an option because the Forum Selection Clause allows litigation in both the federal and state courts. See Salovaara, supra, 246 F.2d at 298 ( noting that transfer is not an option "when a forum selection clause specifies a non-federal forum.").

As this Court observed in Schlein v. Golub (In re Schlein), 182 B.R. 110, 114 (Bankr. E.D. Pa. 1995), the following factors are relevant to a motion for transfer:

    (1) convenience of the parties;

    (2) interest of justice;

    (3) choice of forum;

    (4) enforceability of judgment;

    (5) timeliness and fairness;

16

> (6) the proximity of assets, creditor, debtor, respective principals, evidence and witnesses to the venue of the home court and the court for the proposed venue;
>
> (7) the economical and efficient administration of the estate;
>
> (8) judicial economy;
>
> (9) the applicability of state law to the proceeding; and
>
> (10) a local interest in having a localized controversy decided at home.

Weighing these factors under the circumstances of this case, this Court concludes that this proceeding should be transferred. When the parties entered into their agreements, they contractually agreed that they would litigate in Florida; it was their chosen forum. While it may be less convenient for Debtor to litigate in Florida, it contractually agreed to do so. Moreover, because Debtor has not met its burden of proof under the M/S Bremen rule, a transfer of this proceeding is "in the interest of justice." Litigating this proceeding in Florida will not detrimentally affect the efficient administration of the estate which already has a confirmed plan for liquidation or the enforceability of any judgment. Lastly, since state law rather than bankruptcy law governs breach of contract claims, the expertise of this Court in the area of bankruptcy law will not be utilized in resolving the claims.

Therefore, this proceeding shall be transferred to Florida. Since the only district court in Brevard or Hillsborough County is in Tampa, the proceeding shall be transferred there.

**Summary**

Debtor has not met the standard necessary to deny enforcement of the Forum Selection Clause.   Since transfer is an option over dismissal, the proceeding shall be transferred, in its entirety, to the United States District Court in the Middle District of Florida.

BY THE COURT:

_____
STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE

Dated:  November 30, 2005

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| ACCESS CARE, INC., | : |
|          DEBTORS | : BANKRUPTCY NO. 04-30771(SR) |
| | : |
| ACCESS CARE, INC., | : |
| | : ADVERSARY NO. 05-533 |
|          PLAINTIFF, | : |
|     V. | : |
| STEN-BARR NETWORK SOLUTIONS, INC., | : |
|          DEFENDANT. | : |

## ORDER

**AND NOW**, this 30th day of November, 2005, upon consideration of the Motion of Defendant Sten-Barr Network Solutions, Inc. to Dismiss the Complaint of Plaintiff Access Care, Inc. ("Motion"), and after hearing with notice, and for the reasons set forth in the Court's Opinion, it is hereby ORDERED and DECREED that:

1. The Motion is **GRANTED** in part.

2. The Adversary Proceeding is transferred to the United States District Court for the Middle District of Florida in Tampa, Hillsborough County, Florida.

BY THE COURT:

_____
STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE

MAILING LIST:

Counsel for Debtor/Plaintiff
Bonnie R. Golub, Esquire
Weir & Partners LLP
Suite 500, The Widener Building
1339 Chestnut Street
Philadelphia, PA 19107

Counsel for Defendant/Movant
William Hinchman, Esquire
Adelman, Lavine, Gold & Levin
Four Penn Center
Suite 900
Philadelphia PA 19103

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106